**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, et al., <br><br> Plaintiff, <br><br> v. <br><br> SEQUOIA ELECTRIC, LLC, et al., <br><br> Defendants. | 2:11-CV-1179 JCM (PAL) |

**ORDER**

Presently before the court is plaintiffs Trustees of the Operating Engineers Pension Trust; Trustees of the Operating Engineers Health and Welfare Fund; Trustees of the Operating Engineers Journeyman and Apprentice Training Trust; and Vacation-Holiday Savings Trust's motion for summary judgment. (Doc. #34). Defendants Sequoia Electric, LLC; Sequoia Electric Underground, LLC; Desert Seguro, LLC; Sagebrush Property Ventures, LLC; and Blake Barsy filed a response (doc. #39), to which plaintiffs replied (doc. #41). Subsequently, defendants filed a motion for partial summary judgment (doc. #46), to which plaintiffs responded (doc. #50), and defendants again replied (doc. #53).

I.   <u>Background</u>

*a. Overview of parties*

Plaintiffs are collectively bargained, multi-employer fringe benefit trust funds–commonly called Taft Hartley Trust Funds. Defendants Sequoia Electric Underground ("Underground") and

**James C. Mahan**
**U.S. District Judge**

1   Desert Seguro ("Seguro") are both Nevada limited liability companies. Defendant Blake Barsy d/b/a
2   Sequoia Electric ("Sequoia") is a sole proprietorship and a signatory employer to a collective
3   bargaining agreement with the International Union of Operating Engineers Local No. 12 ("Local
4   12").  Sequoia Electric, LLC ("Sequoia LLC") is also a Nevada limited liability company and
5   signatory employer to the collective bargaining agreement with Local 12.

6       Barsy manages each of the aforementioned corporations, and the companies are operated
7   from the same business address on North Rainbow Blvd. in Las Vegas. (Doc. #34, Ex. 4, no. 13; Ex.
8   6, no. 13; Ex. 11, no. 13; Ex. 17, no. 4). Barsy is an individual doing business as Sequoia. Barsy is
9   also the president of Seguro, which is entirely owned by Clear Diamond, LLC. Clear Diamond LLC
10  is owned by the Barsy Family Trust, of which Barsy is the primary beneficiary. Barsy manages
11  Underground, which is owned by Sequoia LLC. Barsy owned Sequoia LLC, prior to placing it within
12  the res of the Barsy Family Trust.

13      Seguro provides office personnel to Sequoia and Sequoia LLC, who are both electrical
14  contractor corporations in the construction industry doing public works. (Doc. #34, pg. 2). The
15  NLRB has designated Sequoia, Sequoia LLC, and Seguro as a "single employer" under the National
16  Labor Relations Act (NLRA). (Doc. #34, ex. 15, pg. 2). Though Underground was not designated
17  a "single-employer" with the aforementioned corporations, the company works as a contractor and
18  subcontractor with Sequoia and Sequoia LLC. (Doc. #34, Ex. 17, pg. 5).

19      *b. Master Labor Agreement*

20      In October 2003, Sequoia LLC executed a Master Labor Agreement (MLA) with Local 12.
21  In 2008, Sequoia also agreed to be bound to the terms of the MLA. The primary facets of the
22  agreement required Sequoia LLC and Sequoia to submit written reports to plaintiffs detailing work
23  covered by the MLA. (Doc. #1, pg. 3-4). The agreement also required the payment of fringe benefit
24  contributions to plaintiffs on a monthly basis and at specified rates for each hour worked by or paid
25  to these employees. *Id.*

26      Plaintiffs contend that defendants failed to meet their obligations to contribute fringe benefits,
27  as required by the MLA. Specifically, plaintiffs argue that defendants used Seguro and Underground

28

**James C. Mahan**
**U.S. District Judge**

1   to avoid Sequoia and Sequoia LLC's obligations under the MLA by transferring Local 12

2   dispatched-employees to Seguro and Underground's payrolls.  Plaintiffs also argue that Sequoia

3   failed to properly report hours worked by employees performing covered work.

4         Pursuant to a professional audit, plaintiffs assert that Sequoia, Sequoia LLC, and related

5   entities have accrued $651,254.60 in unpaid fringe benefit contributions from May 2006, to

6   September 2011. (Doc. #46, pg. 33).  Plaintiffs also allege that there are $13,212.92 in errors on

7   Sequoia's payroll. *Id.* Plaintiffs request $65,125.46 in liquidated damages and $2,000 in audit costs.

8   *Id.* Plaintiffs further request prejudgment interest on the amount of unpaid contributions in the

9   amount of $33,098.91 and attorney's fees and costs expended in the amounts of $66,453.50 and

10  $10,064.10, respectively. (Doc.#34, pg. 27).

11        Defendants also move for partial summary judgment, claiming that the MLA expired on June

12  30, 2010, and, consequently, this court does not have jurisdiction over disputes arising out of post-

13  contract contributions following the expiration of a collective bargaining agreement.

14  **II.   Discussion**

15        **A.   Legal Standard**

16        Summary judgment is appropriate when, viewing the facts in the light most favorable to the

17  nonmoving party, there is no genuine issue of material fact which would preclude summary

18  judgment as a matter of law. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996); FED. R. CIV. P.

19  56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *T.W. Elec. Serv.,*

20  *Inc. v. Pacific Elec. Contractors Assn*., 809 F.2d 626, 630 (9th Cir.1987).  The purpose of summary

21  judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine

22  need for trial." *Matsushita Elec*., 475 U.S. at 586; *International Union of*

23  *Bricklayers v. Martin Jaska, Inc*., 752 F.2d 1401, 1405 (9th Cir. 1985).

24        The moving party bears the burden of informing the court of the basis for its motion,

25  together with evidence demonstrating the absence of any genuine issue of material fact.  *Celotex*

26  *Corp.v. Catrett*, 477 U.S. 317, 323 (1986); *see also Orr v. Bank of America*, 285 F.3d 764 (9th Cir.

27  2002) (expressing the standard for authentication of evidence on a motion for summary

28

**James C. Mahan**
**U.S. District Judge**

1   judgment).  A trial court can only consider admissible evidence in ruling on a motion for

2   summary judgment.  *Orr*, 285 F.3d at 773.

3   **B.      Discussion**

4        Plaintiffs assert that Sequoia LLC, Sequoia, Underground, and Seguro have operated as alter-

5   egos of one another in order to evade contractual obligations under the MLA. Plaintiffs cite common

6   ownership, common management, centralized control of labor relations, and an interrelation of

7   operations in support of their argument. Furthermore, plaintiffs argue, the operation of Underground

8   and Seguro has been initiated by defendants as a technical change in operation to avoid the

9   obligations of the MLA. Consequently, plaintiffs contend that Sequoia LLC, Sequoia, Seguro and

10  Underground are jointly and severally liable to the trusts for all unpaid fringe benefit contributions,

11  contract damages, audit costs, liquidated damages, and attorney's fees.

12       *1. Determining alter-ego status*

13       The alter-ego test focuses on the existence of a "disguised continuance of the same business

14  or an attempt to avoid the obligations of a collective bargaining agreement through a technical

15  change in operations." *Dariano & Sons v. District Council of Painters*, 869 F.2d 514, 518 (9th Cir.

16  1989). It is the plaintiff's burden to prove that one business is operating as the alter-ego of the other.

17  *S. Cal. Painters & Allied Trades v. Rodin & Co., Inc.*, 558 F.3d 1028, 1032 (9th Cir. 2009). Courts

18  in the Ninth Circuit perform a two-step analysis to determine whether one business is acting as the

19  alter-ego of another.

20       First, the court must make a threshold determination, which is based on whether two or more

21  businesses are substantially owned and operated by identical parties.  *Haley & Haley, Inc. v. NLRB*,

22  880 F.2d 1147, 1150 (9th Cir. 1989); *see also Dariano*, 869 F.2d at 518 ("[W]e ask: is the alleged

23  second business entity under the actual or constructive control of the first company?").

24       Once the court has determined that plaintiff has established this threshold, the court analyzes

25  four criteria to determine alter-ego status: (1) interrelation of operations; (2) common management;

26  (3) centralized control of labor relations; and (4) common ownership. *Haley,* 880 F.2d at 1150. This

27  analysis is identical to the test the National Labor Relations Board (NLRB) performs to determine

28

**James C. Mahan**
**U.S. District Judge**

two or more business' "single-employer" status. *Dariano*, 869 F.2d at 518; s*ee also Operating Engineers Pension Trust v. Moulder Bros., Inc.*, 717 F. Supp. 697, 699 (C.D. Cal. 1989) ("[I]n deciding whether two firms are alter egos for the purpose of federal labor law, the Ninth Circuit directs district courts to consider such NLRB criteria."). The weight given to each criteria varies and is determined on a case-by-case basis. *See Johnstown Corp.* 313 N.L.R.B. 170, 170 (1993) ("Clearly each case must turn on its own facts.").

The NLRB considers a similar, yet broader, set of factors to determine whether one business is a disguised continuance of the other. If two or more entities "have 'substantially identical' management, business purpose, operation, equipment, customers, and supervision, as well as ownership," the NLRB will generally find alter-ego status. *Johnstown*, 313 N.L.R.B. at 170; *see also Vario v. Petrolic Constr. Co.*, 1988 U.S. Dist. LEXIS 3642 (E.D.N.Y. Apr. 6, 1988) ("To determine whether one company is the alter ego of another the Court must weigh a number of factors. The most important factors are "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.").

Here, it is clear from the record that defendants meet the initial threshold that "two or more businesses are substantially owned and operated by identical parties," as required by the Ninth Circuit. *Haley,* 880 F.2d at 1150. Barsy either owns or has a substantial third-party interest in the ownership of each of the entities, and manages each of the companies.

Further, the court finds at the second step of this analysis that defendants are alter-egos. The NLRB has already deemed Seguro, Sequoia LLC, and Sequoia to have "single-employer" status. (Doc. #34, ex. 15, pg. 2). As noted above, the NLRB single-employer analysis is identical to the test the Ninth Circuit performs to determine whether a business is an alter-ego of another. *Operating Engineers,* 717 F. Supp. at 699. Further, defendants do not challenge, nor dispute, the NLRB ruling, and courts generally do not disturb such NLRB rulings. *See Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491 (1947) ("[T]he decision of the Board, if not final, is rarely to be disturbed."). As such, this court finds that Seguro, Sequoia, and Sequoia LLC are alter-egos.

. . .

1    Though Underground was not a part of the NLRB's single-employer original determination,

2    the record demonstrates that the company is managed by Barsy and is operated out of the same

3    location as the other three entities. Further, defendants do not dispute that they placed Sequoia

4    employees on Underground's payroll simultaneously, demonstrating a centralized control of

5    employees. Thus, it is clear that Underground meets the single-employer criteria and is an alter-ego

6    of Sequoia and Sequoia LLC.

7    This court comes to the same conclusion when it analyzes the relationship between the

8    defendants under the broader criteria of the NLRB (identical  management, business purpose,

9    operation, equipment, customers, supervision, and ownership). Seguro and Underground are alter-

10   egos of Sequoia and Sequoia LLC. The NLRB established–and defendants do not dispute–that

11   Seguro, Sequoia, and Sequoia LLC each perform the same work and contract employees between

12   one another.

13   It is clear that defendants share a common business purpose and operation in addition to

14   being under the same supervision and ownership. Underground also performs work similar to that

15   of Seguro, Sequoia, and Sequoia LLC, and defendants have not shown a clear distinction between

16   any of the companies. Each company works as underground contractors in public works, utilizes the

17   same equipment, and even employs the same workers.

18   Barsy contends that the employees at issue in this dispute worked for Seguro before he

19   entered into the agreement with Local 12. (Doc. #39, pg. 30, at ¶ 10). For this reason, Barsy claims,

20   Seguro cannot be the alter-ego of Sequoia and Sequoia LLC because the non-union companies lost

21   employees to the union companies.

22   When an employer entered into an MLA is not the focus of the alter-ego test. Rather, the

23   Ninth Circuit considers whether an entity is "a disguised continuance of the same business" or if

24   there was an "attempt to avoid the obligations of a collective bargaining agreement through a sham

25   transaction or technical change in operations." *Dariano,* 869 F.2d at 518. Defendants do not argue

26   that they did not *later* place employees dispatched by Local 12 on Seguro and Underground's payroll

27   after the execution of the MLA. Doing so, in fact, constitutes a technical change in operations.

28

James C. Mahan
U.S. District Judge

1       In following the guidelines as set forth by the Ninth Circuit and NLRB, this court finds that

2   defendants are alter-egos of Sequoia and Sequoia LLC. Accordingly, it is clear that Seguro and

3   Underground are equally liable under the MLA and are liable for unpaid fringe benefits and related

4   damages.

5       Defendants, however, claim that several material facts are still in dispute, thus preventing

6   summary judgment.  First, plaintiffs claim that Seguro is an "umbrella company." In contrast,

7   defendants claim that Seguro is a "management company that provides management services to

8   certain companies [and has] no ownership interest in any of the companies it manages." Second,

9   defendants claim that the four companies at issue do not share common office staff, but that "Seguro

10  provides office management services, for a fee, to the other entities."  Third, defendants argue that

11  plaintiffs' claim that Seguro obtained equipment from Sequoia LLC for approximately $600,000

12  under market value did not include the fact that Seguro also assumed $738,673.56 in liability.

13      As noted earlier, the NLRB has already found that Seguro, Sequoia, and Sequoia LLC have

14  single-employer status, and defendants' arguments here do not challenge that ruling. *See Packard*,

15  330 U.S. 485, 491 ("Our power of review also is circumscribed by the provision that findings of the

16  Board as to the facts, if supported by evidence, shall be conclusive."). Accordingly, this court finds

17  these arguments immaterial to the present motion for summary judgment.

18      In considering plaintiffs' motion for summary judgment, this court also notes that defendants

19  failed to address several material facts in plaintiffs' motion for summary judgment. For instance,

20  defendants do not negate or even address plaintiffs' claims that employees were dispatched to

21  Sequoia or Sequoia LLC and then placed on Seguro or Underground's payroll. Defendants also do

22  not dispute that such employees performed work covered by the MLA while on Seguro or

23  Underground's payroll.

24      *2. Defendant's motion for partial summary judgment*

25      Defendants' motion for partial summary judgment asserts that damages should be restricted

26  to dates prior to July 1, 2010. Defendants contend that the MLA contained a clause that would cause

27  the agreement to expire on June 30, 2010 as follows:

28

**James C. Mahan**
**U.S. District Judge**

1    "...[this agreement] shall continue from year-to-year . . . unless either of the collective

2    bargaining representatives shall give written notice to the other of a desire to change, amend,

3    modify or terminate this agreement..."

4    (Doc. #39, pg 21).

5       On April 6, 2010, plaintiffs sent a letter to defendants stating that "Local 12 does not wish

6    to include Sequoia Electric LLC in future multi-employer bargaining."

7       Plaintiffs and defendants agree that plaintiffs' letter effectively ended the agreement on June

8    30, and that defendants are not liable for payments after the expiration of the MLA. Plaintiffs only

9    have one objection to the motion for partial summary judgment. Plaintiffs assert that they should not

10   be required to recalculate the benefits owed by subtracting claimed amounts after the June 30, 2010,

11   expiration of the contract. (Doc. #50, pg. 2).

12      The Ninth Circuit has consistently held that the burden shifts to the employer to "show the

13   extent of the unreported covered work" once the trustees show that the employer failed to keep

14   adequate records. *Motion Picture Indus. Pension and Health Plans v. N.T. Audio Visual Supply*, *Inc.*

15   259 F.3d 1063, 1066 (9th Cir. 2001); *see also Operating Engineers Pension Trust v. Moulder Bros.*

16   *Inc.*, 1991 U.S. App. Lexis 16187, at *4 (9th Cir. 1991). ("[The employer] furnished no invoices

17   during the 1988 audit, and only furnished some invoices during the 1989 audit. [The employer] has

18   the burden of coming forward with the invoices to prove any inaccuracy in the audits."); *Brick*

19   *Masons Pension Trust v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333, 1338 (9th Cir.1988)

20   ("[O]nce the trustees produce evidence raising genuine questions about the accuracy of the

21   employer's records . . . the burden shifts to the employer to come forward with evidence of the

22   precise amount of work performed.").

23      Here, the audit revealed–and defendants do not challenge–that defendants failed to keep

24   proper records by under-reporting hours employees worked on Sequoia and Sequoia, LLC's payroll.

25   (Doc. #34, Ex. 23-A). Defendants also do not dispute that they placed union workers on non-union

26   payrolls, thereby failing to properly report hours to Local 12. Thus, the burden shifts to defendants

27   to recalculate the damages owed. *Brick Masons,* 839 F.2d at 1338.

28

**James C. Mahan**
**U.S. District Judge**

1       Accordingly, this court grants defendants' motion for partial summary judgment, restricting

2  the damages owed to dates prior to July 1, 2010. However, defendants will be responsible for

3  recalculating damages.

4       Accordingly,

5       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs Trustees of the

6  Operating Engineers Pension Trust, et al's motion for summary judgment (doc. #34) be, and the

7  same hereby is, GRANTED.

8       IT IS FURTHER ORDERED that defendants Sequoia LLC, et al's motion for partial

9  summary judgment (doc. #46) be, and the same hereby is, GRANTED. However, defendants are

10  responsible for recalculating damages owed.

11       IT IS FURTHER ORDERED that defendants must recalculate the amount due and submit

12  the recalculation to the court within 7 days of entry of this order.  Plaintiffs may respond with any

13  corrections within 7 days of defendants' recalculation.

14       DATED August 1, 2012.

15

16                             _____

17                         **UNITED STATES DISTRICT JUDGE**

18

19

20

21

22

23

24

25

26

27

28